1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9   MONEY MAILER, LLC,

10                    Plaintiff,

11          v.

12   WADE G. BREWER,

13                    Defendant.

14   WADE G. BREWER,

15                    Counterclaim Plaintiff,
16          v.

17   MONEY MAILER, LLC and MONEY
     MAILER FRANCHISE CORP., a Delaware
18   corporation,

19                    Counterclaim Defendants.

NO. C15-1215RSL

ORDER DENYING MOTION FOR
SUMMARY JUDGMENT AND
DENYING MOTION TO COMPEL
ARBITRATION

20

21          This matter comes before the Court on "Money Mailer Franchise Corp.'s Motion for

22   Summary Judgment Dismissing All Counterclaims Against It" (Dkt. # 20) and "Defendant and

23   Counterclaim Plaintiff Brewer's Motion to Compel Arbitration" (Dkt. # 29).  Having reviewed

24   the materials submitted by the parties and the remainder of the record, and having heard oral

25   argument on April 6, 2016, the Court finds as follows.

26                                    **BACKGROUND**

27          Money Mailer Franchise Corporation (MMFC) contracts with franchisees to operate

28   ORDER ON MOTION FOR SUMMARY JUDGMENT
     AND MOTION TO COMPEL ARBITRATION - 1

1    direct mail advertising businesses within a franchised territory.  Dkt. # 12 (Counterclaims) at

2    ¶ 3.1.  MMFC requires that all franchisees use the same printing, freight, and postage system by

3    contracting with Money Mailer, LLC (MMLLC).  Dkt. # 22 (Carr Decl.) at ¶ 3; Dkt. # 22-1

4    (MMFC Franchise Disclosure Document) at 11.  Defendant/counterclaim plaintiff Wade Brewer

5    signed a franchise agreement with MMFC that required arbitration of "any controversy or claim

6    arising out of or relating to this Agreement, or any default of it . . . ."  Dkt. # 22-5 (Franchise

7    Agreement) at 19.  MMLLC's standard agreement, however, does not require arbitration.  Dkt.

8    # 9-1 (MMLLC Standard Purchase Terms and Conditions).  Brewer denies that he ever signed a

9    separate agreement with MMLLC, but does not dispute that he entered into a franchise

10   agreement with MMFC.  See Dkt. # 26 (Declaration of Wade Brewer) at ¶ 2.

11          MMFC and MMLLC were formed as separate entities.  Dkt. # 22 ¶ 4.  There is, however,

12   significant overlap between the two.  Senior managers are the same for both companies:  Gary M.

13   Mulloy was identified as the chairman, president, and chief executive officer for both MMFC

14   and MMLLC (Dkt. # 22-1 at 14, Dkt. # 26-2 at 2); Joseph Craciun was identified as a senior vice

15   president and general counsel for both companies (Dkt. # 22-1 at 14, Dkt. # 26-1 at 113); and

16   John Patinella was identified as the senior vice president of franchise operations for both

17   companies (Dkt. # 22-1 at 14, Dkt. # 27 at 292).  MMLLC also collects various fees on behalf of

18   MMFC.  Dkt. # 22-1 at 20-21.  A Notice of Default sent to defendant Wade Brewer was on

19   letterhead for both MMLLC and MMFC and sought to collect past due balances for both entities.

20   Dkt. # 30-1 at 10.

21          On July 31, 2015, MMLLC, filed a complaint for breach of contract and money due and

22   owing against Brewer.  Dkt. # 1.  MMFC became a party to this action when Brewer asserted

23   counterclaims against it.  Dkt. # 12.  MMFC moved for summary judgment dismissing all

24   counterclaims against it on the basis that Brewer is contractually required to pursue these claims

25

26

27

28   ORDER ON MOTION FOR SUMMARY JUDGMENT
     AND MOTION TO COMPEL ARBITRATION - 2

through arbitration rather than through litigation.  Dkt. # 20.

## DISCUSSION

**A. Summary Judgment**

### 1. Legal Standard

Summary judgment is appropriate if, viewing the evidence in the light most favorable to the nonmoving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); L.A. Printex Indus., Inc. v. Aeropostale, Inc., 676 F.3d 841, 846 (9th Cir. 2012).  The moving party "bears the initial responsibility of informing the district court of the basis for its motion." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  It need not "produce evidence showing the absence of a genuine issue of material fact" but instead may discharge its burden under Rule 56 by "pointing out . . . that there is an absence of evidence to support the nonmoving party's case." Id. at 325. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." Id. "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient"; the opposing party must present probative evidence in support of its claim or defense. Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 919 (9th Cir. 2001); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).  "An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party." In re Barboza, 545 F.3d 702, 707 (9th Cir. 2008) (internal citations omitted).

### 2. Waiver

Brewer contends that MMFC waived the right to arbitrate because "MMLLC not only elected to pursue this pending action for breach of contract claims on its own behalf, but also on

ORDER ON MOTION FOR SUMMARY JUDGMENT
AND MOTION TO COMPEL ARBITRATION - 3

behalf of MMFC for the claimed amounts owed for royalties and other charges not related to MMLLC's services and materials."  Dkt. # 25 at 15.  Brewer argues, among other things, that the three elements necessary for waiver can be found in this case: "(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from inconsistent acts."  Id. (citing Fisher v. A.G. Becker Paribas Inc., 791 F.2d 691, 694 (9th Cir. 1986)).  MMFC responds that Brewer cannot meet the second and third elements of the Fisher test for waiver, and that in any case waiver is a question for the arbitrator to decide.  Dkt. # 28 at 5-10.  The Court will address whether waiver is an issue it may decide before turning to the elements of the test for waiver.

MMFC notes that its agreement with Brewer incorporates the American Arbitration Association (AAA) commercial arbitration rules (Dkt. # 22-5 (Franchise Agreement) at 19), and that the Ninth Circuit recently held that "incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability."  Brennan v. Opus Bank, 796 F.3d 1125, 1130 (9th Cir. 2015).   MMFC then points to the Supreme Court's observation that "the arbitrator should decide allegations of waiver, delay, or a like defense to arbitrability."  Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002) (internal quotation marks omitted).

Brennan, however, left open the possibility that in an agreement involving an unsophisticated party, incorporation of the AAA rules may not evince a "clear and unmistakable" intent to delegate.  796 F.3d at 1131.  Brennan had been a long-time partner at Jones Day and had been Senior Vice President, General Counsel, and Deputy Chief Legal Officer of Washington Mutual for seven years, and Opus Bank was "a sophisticated, regional financial institution."  Id.  In this case, while Brewer had been a small business owner and a sales and general manager, he appears to have had no legal experience.  See Dkt. # 28 at 3.  He

also had no prior experience as a franchisee.  Dkt. # 26 (Declaration of Wade Brewer) ¶ 3.
While perhaps more sophisticated with respect to commercial agreements than the luggage
delivery driver in Vargas v. Delivery Outsourcing, LLC, 2016 WL 946112 (N.D. Cal. Mar. 14,
2016), Brewer certainly is not comparable to the experienced attorney or regional financial
institution in Brennan.  As the Vargas court observed:

> [A]n inquiry about whether the parties clearly and unmistakably delegated
> arbitrability by incorporation should first consider the position of those parties. . . .
> To a large corporation . . . or a sophisticated attorney . . . , it might be reasonable to
> conclude that incorporation of the rules clearly and unmistakably evinces an intent
> to delegate.  But applied to an inexperienced individual, untrained in the law, such
> a conclusion is likely to be much less reasonable.

2016 WL 946112, at *7.  Incorporation of the AAA rules in this case does not show a "clear and
unmistakable" intent to delegate questions of arbitrability.

This is particularly so because of the Washington addendum to the franchise agreement,
which provides that "if you are a resident of the State of Washington, the Washington Franchise
Agreement Addendum will apply, will amend this Agreement and will supersede any contrary
terms in this Agreement."  Dkt. # 22-5 (Carr Decl.) at 13.  The Washington Addendum, in turn
notes that the "State of Washington has a statute, RCW 19.100.180 which may supersede the
franchise agreement in your relationship with the franchisor . . . . Provisions such as those which
unreasonably restrict or limit . . . rights or remedies under the Act such as the right to a jury trial
may not be enforceable."  Id. at 31.  The Washington Addendum therefore leaves the impression
that a Washington franchisee has recourse to the courts in at least some cases, further supporting
the conclusion that there is not clear evidence that the question of arbitrability is delegated to the
arbitrator.  See Vargas, 2016 WL 946112, at *6 ("Other courts analyzing similar conflicts as the
one here – an unambiguous delegation clause contradicted by another provision of the contract –
have declined to enforce the delegation clause.").

ORDER ON MOTION FOR SUMMARY JUDGMENT
AND MOTION TO COMPEL ARBITRATION - 5

Moreover, the Court is not persuaded that the Ninth Circuit has abandoned its earlier "case law [that] makes clear that courts properly exercise jurisdiction over claims raising (1) defenses existing at law or in equity for the revocation of (2) the arbitration clause itself." <u>Cox v. Ocean View Hotel Corp.</u>, 533 F.3d 1114, 1120, 1124 (9th Cir. 2008) (considering waiver issue).  The Ninth Circuit observed that the "reasoning of <u>Howsam</u> is simply inapplicable to resolution of the first gateway issue: whether the parties are *bound* by the arbitration clause." <u>Id.</u> at 1121; <u>see also, e.g.</u>, <u>Ehleiter v. Grapetree Shores, Inc.</u>, 482 F.3d 207, 217-18 (3d Cir. 2007) ("[W]e conclude that the Supreme Court did not intend its pronouncements in <u>Howsam</u> and <u>Green Tree</u> to upset the 'traditional rule' that courts, not arbitrators, should decide the question of whether a party has waived its right to arbitrate by actively litigating the case in court."); <u>RISO, Inc. v. Witt Co.</u>, 2014 WL 4627267 (C.D. Cal. Sept. 16, 2014) (observing that several circuits "have interpreted <u>Howsam</u>'s use of the term 'waiver' as referring not to conduct-based waiver, but to a defense arising from non-compliance with contractual conditions precedent to arbitration" (internal quotation marks omitted)).

Even in circuits that have concluded that incorporation of the AAA rules constitutes a clear and unmistakable agreement that the parties will arbitrate arbitrability, courts have properly addressed the question of waiver through litigation conduct despite incorporation of the AAA rules.  <u>See</u> <u>Plaintiff's Shareholders Corp. v. S. Farm Bureau Life Ins. Co.</u>, 486 F. App'x 786, 789-90 (11th Cir. 2012) (district court properly addressed waiver based on litigation conduct; incorporation of AAA rules did not "constitute clear and unmistakable evidence of an agreement to arbitrate issues of conduct-based waiver").  This outcome is consistent with the reasons for courts, rather than arbitrators, to decide conduct-based waiver questions: leaving the issue to the decisionmaker with the expertise and power to control its docket and prevent abuse in its proceedings; avoiding the inefficiency of "sending waiver claims to the arbitrator . . . in cases in which the alleged waiver arises out of conduct within the very same litigation in which the party

ORDER ON MOTION FOR SUMMARY JUDGMENT
AND MOTION TO COMPEL ARBITRATION - 6

attempts to compel arbitration"; and preventing the arbitrator from "get[ting] first crack at defenses to a motion to compel arbitration based on waiver[,]" which would essentially require the court to compel arbitration without reviewing the parties' contentions. <u>Cox</u>, 533 F.3d at 1121 n.5; <u>PNC Bank, N.A. v. Presbyterian Ret. Corp.</u>, 2015 WL 1931395, at *4 (S.D. Ala. Apr. 28, 2015); <u>Discover Prop. & Cas. Ins. Coo. v. Tetco, Inc.</u>, 2014 WL 685367, at *6 (D. Conn. Feb. 19, 2014).

For the reasons above, the Court concludes that notwithstanding <u>Brennan</u>, it has the obligation to determine whether Brewer has raised material issues of fact regarding MMFC's potential waiver of the right to arbitrate through litigation conduct.  MMFC does not dispute that the first element of the <u>Fisher</u> test has been met: knowledge of the right to arbitrate.  MMFC vigorously disputes that it has taken any acts inconsistent with its right to arbitrate, the second <u>Fisher</u> element.  At the time this motion was briefed, Brewer had neither an answer nor discovery from MMFC. Dkt. # 25 at 13.  He claims, however, that in its suit, MMLLC "not only elected to pursue this pending action for breach of contract claims on its own behalf, but also on behalf of MMFC for the claimed amounts owed for royalties and other charges not related to MMLLC's services and materials." <u>Id.</u> at 15.  This assertion alone would be insufficient to avoid summary judgment, but Brewer submitted a supplemental declaration that raises an issue of fact regarding the amount MMLLC seeks to recover in its lawsuit. <u>See</u> Dkt. # 30.  Prior to the lawsuit, MMLLC and MMFC's collection attempts grouped together amounts allegedly owed to the two entities. <u>See</u> Dkt. # 30-1 at 10-18.  On May 29, 2015, MMLLC and MMFC sought to collect a combined $1,671,637.90. <u>Id.</u> at 10.  Two months later, MMLLC filed suit, claiming that Brewer owed it $1,733,555.00, not including accrued interest. Dkt. # 1 ¶ 18.  The fact that the MMLLC-initiated lawsuit sought an amount greater that the combined MMLLC/MMFC demand letter sent just two months earlier raises an issue of fact regarding the amount MMLLC seeks to recover in the lawsuit and whether it includes amounts previously owed to MMFC

1   under its agreement with Brewer.

2    Brewer objects to the supplemental declaration of Ryan Carr (Dkt. # 31), which attempts

3   to respond to Brewer's claims regarding the source(s) of the amount sought in this litigation.

4   <u>See</u> Dkt. # 33.  The Court, for the purposes of this motion, has considered the supplemental Carr

5   declaration and concludes that it does not adequately address the facts Brewer has set forth.

6   Most fundamentally, Carr repeatedly asserts that the lawsuit seeks recovery of funds due to

7   MMLLC, but does not explain how this amount was calculated or whether it includes amounts

8   previously due to MMFC under Brewer's contract with that entity, but assigned to MMLLC.

9   There also remains a question regarding whether this amount includes the fees that MMLLC

10  collects on behalf of MMFC.  <u>See</u> Dkt. # 22-1 at 20-21.  The Carr declaration also quibbles with

11  the inferences that may be drawn from the facts Brewer presented, but on MMFC's motion for

12  summary judgment, the Court will view the facts in the light most favorable to Brewer.

13   Brewer has adequately raised material issues of fact regarding whether the lawsuit seeks

14  funds originally due to MMFC under the terms of the franchise agreement.  Although MMLLC

15  filed the lawsuit, the facts set forth by Brewer, again viewed in the light most favorable to his

16  position, likewise raise the inference that MMFC, by assigning or otherwise authorizing

17  MMLLC to attempt to recover amounts owed under the MMFC contract through litigation, has

18  acted inconsistently with the right to compel arbitration.  <u>Cf.</u> <u>United Computer Sys., Inc. v. AT</u>

19  <u>& T Corp.</u>, 298 F.3d 756, 765 (9th Cir. 2002) (filing lawsuit inconsistent with right to arbitrate).

20  Although MMFC was not the entity that filed the lawsuit, if it had some involvement in

21  assigning claims to MMLLC for the purposes of seeking relief in court or otherwise assented to

22  MMLLC's actions to recover amounts due to MMFC, those acts would be inconsistent with the

23  right to arbitrate.

24   The Court now turns to the third waiver prong: prejudice.  MMFC is correct that

25  arbitration may be compelled "even where the result would be the possibility inefficient

26

27

28  ORDER ON MOTION FOR SUMMARY JUDGMENT
    AND MOTION TO COMPEL ARBITRATION - 8

maintenance of separate proceedings in different forums." <u>Fisher</u>, 791 F.2d at 698. But while

MMFC is also correct that in some cases an early request means that the party resisting

arbitration is not prejudiced by inconsistent actions, delay is not the only question in an analysis

of prejudice. <u>See</u> <u>Brown v. Dillard's, Inc.</u>, 430 F.3d 1004, 1012 (9th Cir. 2005) (analyzing

parties' behavior pre-suit and concluding that plaintiff suffered prejudice); <u>see also</u> <u>Riverside</u>

<u>Publ'g Co. v. Mercer Publ'g LLC</u>, 829 F. Supp. 2d 1017, 1021-22 (W.D. Wash. 2011) ("The

Ninth Circuit has not, so far as the court is aware, limited the scope of a court's prejudice

inquiry."). In the circumstances of this case, the Court has little trouble concluding that if

MMLLC filed suit to recover amounts Brewer owed to MMFC under the terms of the MMFC

agreement, Brewer would suffer prejudice by defending against those claims in federal court

while being forced to arbitrate other disputes with MMFC. As noted above, Brewer has raised a

factual issue regarding the amount MMLLC seeks to recover, and if the Court draws a favorable

inference from those facts, Brewer would suffer prejudice by defending some of MMFC's

claims in federal court while arbitrating others, when all are properly subject to an arbitration

clause. This conclusion is bolstered by the fact that waiver is an equitable doctrine, meaning that

"courts can apply it to redress injustice in situations where technical requirements prevent the

court from otherwise providing adequate legal remedies." <u>Cox</u>, 533 F.3d at 1125.

  Because Brewer has raised issues of fact regarding waiver, the Court denies MMFC's

motion for summary judgment at this time. The Court has not considered the parties' other

arguments here because the waiver issue is dispositive. If, after discovery, MMFC can

demonstrate that MMLLC is not seeking any amount due under the Brewer/MMFC agreement, it

may again move for summary judgment or to compel arbitration.

**B. Motion to Compel Arbitration**

  Brewer filed his motion to compel arbitration as a prophylactic measure in the event that

the Court granted MMFC's motion for summary judgment. Because the Court denied the

ORDER ON MOTION FOR SUMMARY JUDGMENT
AND MOTION TO COMPEL ARBITRATION - 9

1  motion for summary judgment, it will also deny the motion to compel arbitration at this time.

2  **CONCLUSION**

3        For the foregoing reasons, the Court DENIES without prejudice Money Mailer Franchise

4  Corporation's motion for summary judgement dismissing all counterclaims against it (Dkt. # 20)

5  and DENIES without prejudice Brewer's motion to compel arbitration (Dkt. # 29).

6

7        DATED this 8th day of April, 2016.

8

9

10  *Mht S Lasnik*

11  Robert S. Lasnik
    United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  ORDER ON MOTION FOR SUMMARY JUDGMENT
AND MOTION TO COMPEL ARBITRATION - 10