UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MONEY MAILER, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>WADE G. BREWER,<br><br>    Defendant.<br>_____<br>WADE G. BREWER,<br><br>    Counterclaim Plaintiff,<br><br>    v.<br><br>MONEY MAILER, LLC and MONEY MAILER FRANCHISE CORP., a Delaware corporation,<br><br>    Counterclaim Defendants. | NO. C15-1215RSL<br><br>ORDER DENYING MONEY MAILER FRANCHISE CORP.'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO COMPEL ARBITRATION AND TO STAY PURSUANT TO 9 U.S.C. § 3 |

This matter comes before the Court on "Money Mailer Franchise Corp.'s Motion for Summary Judgment or to Compel Arbitration and To Stay Pursuant to 9 USCS § 3." Dkt. # 81. Having reviewed the materials submitted by the parties and the remainder of the record, the Court finds as follows.

## BACKGROUND

As the Court has previously summarized, Dkt. # 47, Money Mailer Franchise Corporation

ORDER DENYING MOTION FOR SUMMARY JUDGMENT
AND MOTION TO COMPEL ARBITRATION - 1

(MMFC) contracts with franchisees to operate direct mail advertising businesses within a franchised territory. Dkt. # 12 (Counterclaims) at ¶ 3.1. MMFC requires franchisees to contract with Money Mailer, LLC (MMLLC) for all "printing, production, distribution, and mailing services" associated with their mailing business. Dkt. # 22 (Carr Decl.) at ¶¶ 3–4; Dkt. # 22-1 (MMFC Franchise Disclosure Document) at 11.

Though MMFC and MMLLC were formed as separate entities, apparently for tax purposes, there is significant organizational overlap between the two entities. As explained above, MMFC requires franchisees to rely on MMLLC for all of their printing, production, distribution, and mailing needs (and to pay MMLLC tens of thousands of dollars per month for these services). Dkt. # 22 ¶ 4; see Dkt. # 26-1. Additionally, senior managers are the same for both companies: Gary M. Mulloy was identified as the chairman, president, and chief executive officer for both MMFC and MMLLC (Dkt. # 22-1 at 14; Dkt. # 26-2 at 2); Joseph Craciun was identified as a senior vice president and general counsel for both companies (Dkt. # 22-1 at 14; Dkt. # 26-1 at 113); and John Patinella was identified as the senior vice president of franchise operations for both companies (Dkt. # 22-1 at 14; Dkt. # 27 at 292). Moreover, MMLLC collects numerous fees and "royalties" from franchisees on behalf of MMFC. Dkt. # 22-1 at 20-21.

In April 2011, defendant/counterclaim plaintiff Wade Brewer, who was interested in becoming a Money Mailer franchisee, received a copy of MMFC's "Franchise Disclosure Document," which contains numerous attachments and exhibits. Dkt. # 22-1 at 1 – Dkt. # 22-4 at 54; Dkt. # 22-4 at 56. The Franchise Disclosure Document (FDD) explains that franchisees "are required to obtain shared mailing production services and materials from MMLLC," and "will directly contract for these services and materials with MMLLC." Dkt. # 22-1 at 12. This requirement is repeated elsewhere in the FDD. Dkt. # 22-1 at 28, 39–40. Attachment K to the FDD lists "MMLLC Standard Purchase Terms and Conditions." Dkt. # 22-4 at 43–48. The

ORDER DENYING MOTION FOR SUMMARY JUDGMENT
AND MOTION TO COMPEL ARBITRATION - 2

"State Cover Page" of the FDD discloses that MMFC's franchise agreement (a copy of which is reproduced as Attachment D to the FDD) would contain a mandatory arbitration clause. Dkt. # 22-1 at 3. The "MMLLC Standard Purchase Terms and Conditions" do not mention arbitration. Dkt. # 22-4 at 43–48. Shortly after receiving the FDD, Brewer applied to become a franchisee by submitting a "Request for Consideration" to MMFC. Dkt. # 22-4 at 58.

In June 2011, Brewer signed a ten-year franchise agreement with MMFC that required arbitration of "any controversy or claim arising out of or relating to this Agreement, or any default of it, including any claim that this Agreement, or any part of it, is invalid, illegal or otherwise voidable or void . . . ." Dkt. # 22-4 at 62; Dkt. # 22-5 at 9. A Washington state addendum, attached to the franchise agreement as Exhibit F, expressly amended and superseded contrary terms in the franchise agreement. See Dkt. # 22-5 at 13; Dkt. # 22-5 at 31. Among other things, the Washington addendum provided that the Washington Franchise Investment Protection Act's provision on franchisees' rights, RCW 19.100.180, "may supersede the franchise agreement in your relationship with the franchisor." Dkt. # 22-5 at 31. Moreover, a "release or waiver of rights executed by a franchisee shall not include rights under the Washington Franchise Investment Protection Act," and "[p]rovisions such as those which unreasonably restrict or limit the statute of limitations period for claims under the Act, rights or remedies under the Act such as a right to a jury trial may not be enforceable." Id.

The franchise agreement further provided that "the Services and Materials provided by MMLLC to you shall be subject to separate and independent contractual arrangements directly between MMLLC and you and . . . all disputes and claims between MMLLC and you regarding any Services and Materials provided to you, and the payment and collection of amounts owed therefor, are not subject to the arbitration provision set forth in this Agreement." Dkt. # 22-5 at 9. Brewer denies that he ever signed a separate contract with MMLLC, but does not dispute that he entered into a franchise agreement with MMFC. See Dkt. # 26 at ¶ 2.

ORDER DENYING MOTION FOR SUMMARY JUDGMENT
AND MOTION TO COMPEL ARBITRATION - 3

Over the next four years, Brewer operated a Money Mailer franchise and was continuously billed by MMLLC for charges from both MMFC and MMLLC. See Dkt. # 26-1 at 34–61.  Beginning in 2012, Brewer repeatedly challenged the basis for those bills, which continued to mount.  Dkt. # 26 at ¶¶ 9–10.

In May 2015, Brewer received a "Notice of Default" on letterhead for both MMLLC and MMFC, seeking to collect over $1.6 million in past due balances for both entities and offering Brewer the chance to avoid termination of his franchise through a single $800,000 "cure" payment (which, notably, would *not* relieve Brewer's obligation to pay the balance of his debt). Dkt. # 30-1 at 10.

On July 31, 2015, MMLLC sued Brewer for breach of contract and for over $1.7 million in past-due charges. Dkt. # 1.  Shortly thereafter, Brewer asserted counterclaims against both MMLLC and MMFC, including violations of the Washington Consumer Protection Act and the Washington Franchise Investment Protection Act, breach of contract, misrepresentation, and unjust enrichment. Dkt. # 12.

In October 2015, MMFC moved for summary judgment on all counterclaims against it, arguing that per the arbitration clause in Brewer's franchise agreement with MMFC, Brewer is contractually required to pursue his claims against MMFC through arbitration rather than through litigation.  Dkt. # 20.  MMFC argued that this arbitration provision does not similarly foreclose MMLLC's suit in federal court because Brewer contracted separately with MMLLC, and this separate contract does not contain an arbitration agreement.  Brewer asked the Court to deny MMFC's motion for summary judgment, or, in the alternative, to compel arbitration of MMLLC's claims against him alongside his claims against MMFC. Dkt. ## 25, 29.

In April 2016, the Court denied MMFC's motion for summary judgment, concluding that a genuine issue of material fact remained regarding whether MMFC had waived its contractual right to arbitrate by seeking recovery from Brewer through its alter ego MMLLC in this litigation, and that in this case the question of waiver was appropriate for judicial rather than

ORDER DENYING MOTION FOR SUMMARY JUDGMENT
AND MOTION TO COMPEL ARBITRATION - 4

arbitral determination. Dkt. # 47. In the same order, the Court denied Brewer's motion in the alternative for an order compelling arbitration.

MMFC moved for reconsideration, Dkt. # 49, and subsequently appealed, Dkt. # 57. The Ninth Circuit stayed the appeal pending this Court's resolution of the motion for reconsideration. In November 2016, this Court granted in part and denied in part MMFC's motion for reconsideration, Dkt. # 74, and MMFC renewed its notice of appeal, Dkt. # 76.[1]

In February 2017, MMFC filed this second motion for summary judgment, again arguing that the mandatory arbitration clause in Brewer's franchise agreement forecloses all of Brewer's counterclaims in this lawsuit. Dkt. # 81. Responding to the Court's conclusion that a genuine issue of fact remained regarding waiver of MMFC's right to arbitrate – specifically, whether MMLLC is seeking to recover Brewer's debts to MMFC as well as his debts to MMLLC, see Dkt. # 47 – MMFC now attaches additional evidence that MMLLC sued Brewer purely on its own behalf. MMFC asks the Court to enter summary judgment in its favor on all of Brewer's counterclaims, or alternatively to stay this proceeding under Section 3 of the Federal Arbitration Act, 9 U.S.C. § 3, pending arbitration of those counterclaims. As before, Brewer argues that MMFC waived its right to enforce the arbitration clause through litigation conduct.

## DISCUSSION

The Court has already concluded that the question whether MMFC waived its right to enforce the franchise agreement arbitration clause through litigation conduct is appropriate for judicial rather than arbitral resolution. See Dkt. # 47 at 7; Dkt. # 74 at 2–6; Howsam v. Dean

---

[1] This appeal remains pending, though it appears that the Ninth Circuit lacks jurisdiction over it, as the Court's order denying MMFC's motion for summary judgment is not an appealable interlocutory order under 28 U.S.C. § 1292. See Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546 (1949). It is true that orders denying motions to compel arbitration are appealable under 9 U.S.C. § 16(a)(1)(B), but MMFC did not expressly appeal the Court's order denying *Brewer's* motion to compel arbitration, which MMLLC (and presumably MMFC as well) opposed, Dkt. # 34. Assuming that 9 U.S.C. § 16(a)(1)(B) provides the basis for the Ninth Circuit's appellate jurisdiction, however, this Court retains jurisdiction over the continued district court proceedings.

ORDER DENYING MOTION FOR SUMMARY JUDGMENT
AND MOTION TO COMPEL ARBITRATION - 5

1  Witter Reynolds, Inc., 537 U.S. 79, 84 (2002) ("[A] gateway dispute about whether the parties
2  are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide.");
3  Martin v. Yasuda, 829 F.3d 1118, 1123 & n.3 (9th Cir. 2016) ("We have made clear that waiver
4  by litigation conduct is part of the first category of gateway issues.").[2]  Accordingly, the only
5  issue now before the Court is whether MMFC waived its right to compel arbitration of Brewer's
6  counterclaims through litigation conduct.

7  **A.   Summary Judgment Standard**

8  Summary judgment is appropriate if, viewing the evidence in the light most favorable to
9  the nonmoving party, "the movant shows that there is no genuine dispute as to any material fact
10 and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); L.A. Printex
11 Indus., Inc. v. Aeropostale, Inc., 676 F.3d 841, 846 (9th Cir. 2012).  The moving party "bears the
12 initial responsibility of informing the district court of the basis for its motion." Celotex Corp. v.
13 Catrett, 477 U.S. 317, 323 (1986).  It need not "produce evidence showing the absence of a
14 genuine issue of material fact" but instead may discharge its burden under Rule 56 by "pointing
15 out . . . that there is an absence of evidence to support the nonmoving party's case." Id. at 325.
16 Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-
17 moving party fails to designate "specific facts showing that there is a genuine issue for trial." Id.

---

[2] MMFC argues at length in its summary judgment motion that an arbitrator should decide the waiver issue. Dkt. # 81 at 16–24; Dkt. # 95 at 3–7.  In an attempt to avoid the Ninth Circuit's clear direction that the question of waiver through litigation conduct is properly decided by a court, see Martin, 829 F.3d at 1123, MMFC attempts to recast the waiver issue as one of "assignment, standing, and the real party in interest." Dkt. # 81 at 20.  As the Court has already addressed and resolved the question whether it may decide the waiver issue – first in its earlier summary judgment order, Dkt. # 47, then again in its order on MMFC's motion for reconsideration, Dkt. # 74 – the Court declines to revisit the issue for a third time. See United States v. Lummi Nation, 763 F.3d 1180, 1185 (9th Cir. 2014) ("The law of the case doctrine is a judicial invention designed to aid in the efficient operation of court affairs.  Under the doctrine, a court is generally precluded from reconsidering an issue previously decided by the same court, or a higher court in the identical case." (internal citations omitted)).

ORDER DENYING MOTION FOR SUMMARY JUDGMENT
AND MOTION TO COMPEL ARBITRATION - 6

"The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient"; the opposing party must present probative evidence in support of its claim or defense. Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 919 (9th Cir. 2001); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991). "An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party." In re Barboza, 545 F.3d 702, 707 (9th Cir. 2008) (internal citations omitted).

**B.   Waiver**

The right to arbitration, like other contractual rights, can be waived. Martin, 829 F.3d at 1124. Because waiver of the right to arbitration is disfavored, however, the party arguing waiver bears a heavy burden of proof. Id. (quoting Fisher v. A.G. Becker Paribas Inc., 791 F.2d 691, 694 (9th Cir. 1986)). Accordingly, in this case, Brewer must demonstrate: (1) that MMFC knew of an existing right to compel arbitration; (2) that MMFC acted inconsistently with that existing right; and (3) prejudice to Brewer resulted from MMFC's inconsistent acts. See id. MMFC does not dispute that it knew of an existing right to compel arbitration; accordingly, the Court addresses only the second two elements of the waiver standard.

The heart of this waiver dispute is whether MMLLC's lawsuit against Brewer constituted acts by MMFC inconsistent with MMFC's claimed right to arbitrate Brewer's counterclaims.[3] MMFC insists that it was not involved in this litigation in any way until Brewer named it as a defendant in his answer and counterclaims, and accordingly that any litigation conduct by MMLLC cannot be attributed to MMFC for purposes of the waiver analysis. Brewer responds that MMFC and MMLLC are alter egos, and that MMLLC's lawsuit waived MMFC's right to

---

[3] Brewer maintains that the arbitration agreement is unenforceable in any event. Dkt. # 90 at 7. Because the waiver issue is dispositive, the Court does not reach the question whether the arbitration agreement is otherwise enforceable.

ORDER DENYING MOTION FOR SUMMARY JUDGMENT
AND MOTION TO COMPEL ARBITRATION - 7

arbitrate under the franchise agreement.

To demonstrate that MMFC was not involved in MMLLC's claims against Brewer, MMFC attaches a declaration from Ryan Carr, who is Senior Vice President and Chief Financial Officer of both MMFC and MMLLC. Dkt. ## 82 (original declaration), 88-1 (corrected declaration). In that declaration, Mr. Carr explains how Brewer's debts to MMFC and MMLLC were separately accounted for by MMLLC, even as MMLLC billed Brewer for amounts owed to MMFC. Dkt. # 88-1 at ¶ 4. Mr. Carr attaches as exhibits to his declaration two spreadsheets apparently showing the portion of each MMLLC invoice constituting an MMFC charge rather than an MMLLC charge. Dkt. ## 85, 86. The total sum of MMLLC charges reported in the spreadsheet ($1,733,205) corresponds to the amount sought in MMLLC's first amended complaint, though Brewer argues that MMFC charges have been deliberately shifted to MMLLC's side of the ledger so that MMLLC can collect them in this lawsuit. See Dkt. ## 9, 86.

Brewer further responds that even if MMLLC's complaint against Brewer seeks a sum owed to MMLLC alone, Brewer's obligation to pay MMLLC arises from the franchise agreement that Brewer signed with MMFC, not from a separate contractual arrangement with MMLLC. Indeed, in filing this lawsuit, MMLLC apparently relies on Brewer's franchise agreement with MMFC as the legal basis of MMLLC's breach-of-contract claims: MMLLC attached to its amended complaint the "MMLLC Standard Purchase Terms and Conditions" that appeared as Attachment K to the Franchise Disclosure Document that Brewer received in April 2011, and cites the terms of that document as the contract provision that Brewer allegedly breached. Dkt. # 9 at ¶ 20. MMLLC also cites Attachment K for the proposition that MMLLC is not required to arbitrate its claims against Brewer. *See* Dkt. # 1, ¶ 20; Dkt. # 1-1 at 5. Notably, though MMLLC has repeatedly emphasized language in the FDD and the franchise

ORDER DENYING MOTION FOR SUMMARY JUDGMENT
AND MOTION TO COMPEL ARBITRATION - 8

agreement providing that franchisees contract separately with MMLLC for its printing services, MMLLC has failed to produce any such contract between Brewer and MMLLC. Even after Brewer highlighted MMLLC's remarkable failure to produce a contract in what is ostensibly a breach-of-contract action, see Dkt. # 90 at 3–4; Dkt. # 91 at ¶ 1, MMLLC replied simply that Attachment K itself is the contract between Brewer and MMLLC. Dkt. # 95 at 8–9. Given the apparent absence of any other contractual basis for MMLLC's suit against Brewer, if Attachment K constitutes the contract underlying MMLLC's lawsuit, it is through incorporation into the franchise agreement between Brewer and MMFC along with the rest of the FDD. This franchise agreement contains the arbitration clause that MMFC now asserts as a defense to Brewer's counterclaims, and accordingly it would seem that any disputes grounded on Attachment K (with the exception of "disputes and claims between MMLLC and [Brewer] regarding any Services and Materials provided to [Brewer]") are subject to that arbitration clause, as well.

Regardless of whether the franchise agreement's arbitration clause applies to MMLLC's claims arising from Attachment K, however, Brewer has demonstrated that MMLLC effectively filed this lawsuit to recoup debts on behalf of both itself *and MMFC*, as the bookkeeping detailed in Mr. Carr's declaration and spreadsheets substantially intermingles Brewer's debts to MMLLC and to MMFC. For example, MMFC "credits" serve to reduce Brewer's debt to both MMLLC and MMFC, and "payments" against Brewer's debt are applied to Brewer's net debt rather than separately to his MMLLC and MMFC debts. See Dkt. # 85. Because Brewer did not make separate payments against his debts to MMLLC and MMFC, it is impossible to say that the amount of MMLLC debt sought in this lawsuit is truly the amount of money that Brewer yet owes to MMLLC for its services. Of course, the very fact that Mr. Carr was obligated to create those itemized spreadsheets for the purpose of this litigation suggests that MMLLC's routine

ORDER DENYING MOTION FOR SUMMARY JUDGMENT
AND MOTION TO COMPEL ARBITRATION - 9

1  business practice is to account for both sets of debts as one.  Moreover, Brewer has presented
2  evidence that MMLLC's *post hoc* re-creation of its bookkeeping miscategorized MMFC debts as
3  MMLLC debts, suggesting that the debt sought in MMLLC's lawsuit included MMFC debts.
4  See Dkt. # 91 at ¶¶ 3–13.  MMLLC's lawsuit on behalf of MMFC to recover amounts due to
5  MMFC is inconsistent with MMFC's right to arbitrate.  See Martin, 829 F.3d at 1125–26; cf.
6  United Computer Sys., Inc. v. AT & T Corp., 298 F.3d 756, 765 (9th Cir. 2002) (concluding that
7  filing a lawsuit is inconsistent with right to arbitrate).
8      The Court now turns to the third waiver element:  prejudice.  In its earlier summary
9  judgment order, Dkt. # 47, the Court concluded that if MMFC sought to recover amounts Brewer
10 owed to MMFC through MMLLC's lawsuit, Brewer would suffer prejudice from defending
11 against those claims in federal court while being forced to arbitrate other disputes with MMFC.
12 As noted above, Brewer has introduced ample evidence that MMFC did just that.  Accordingly,
13 Brewer has suffered prejudice from MMFC's inconsistent acts, and has met his "heavy burden"
14 of showing waiver of the right to arbitrate pursuant to his franchise agreement with MMFC.  See
15 Martin, 829 F.3d at 1127–28.

**C.   Motion to Compel Arbitration**

MMFC moved in the alternative for an order compelling arbitration under 9 U.S.C. § 4 and staying litigation under 9 U.S.C. § 3.  Because the Court finds that MMFC's litigation conduct waived the right to arbitrate, it will also deny the motion to compel arbitration of Brewer's counterclaims.

**CONCLUSION**

For all the foregoing reasons, Money Mailer Franchise Corporation's motion for summary judgment or to compel arbitration (Dkt. # 81) is DENIED.

DATED this 17th day of July, 2017.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER DENYING MOTION FOR SUMMARY JUDGMENT
AND MOTION TO COMPEL ARBITRATION - 11