UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MONEY MAILER, LLC,

    Plaintiff,

v.

WADE G. BREWER,

    Defendant.

NO. C15-1215RSL

ORDER REGARDING DEFENDANT'S MOTION TO COMPEL

This matter comes before the Court on "Counterclaim Plaintiff Wade Brewer's Motion to Compel Discovery Responses." Dkt. # 163. Brewer asserts that Money Mailer has improperly produced thousands of pages of documents without identifying to which discovery request they are responsive, has refused to state whether all responsive documents have been produced, and has improperly withheld documents on which its in-house counsel was copied. Having reviewed the memoranda, declarations, and exhibits submitted by the parties, the Court finds as follows:

**A. Production of Electronically Stored Information ("ESI")**

A party producing documents must either produce them as they are kept in the ordinary course of business or organize and label them to correspond to the categories in the discovery requests. Fed. R. Civ. P. 34(b)(2)(E)(i). Essentially, the Federal Rules of Civil Procedure require that the producing party give some structure to its production: a party may not dump voluminous, poorly organized documents on its adversary and force him or her "to rummage

ORDER REGARDING DEFENDANT'S
MOTION TO COMPEL - 1

through piles of paper in search of what is relevant. To comply with the rule, a party must rationally organize[ ] its productions, so that the requesting party may readily identify documents, including ESI, that are responsive to [the] production requests." *Teledyne Instruments, Inc. v. Cairns*, 2013 WL 5781274, at * 8 (M.D. Fla. Oct. 25, 2013) (alterations in original).

The underlying assumption of Fed. R. Civ. P. 34(b)(2)(E)(i) is that businesses have an incentive to maintain their documents in a manner that allows the "systemized retrieval of relevant documents" when needed, so a production of documents as kept in the ordinary course of business will allow the opposing party to utilize that system and locate responsive documents. *Andritz Sprout–Bauer, Inc. v. Beazer East, Inc.*, 174 F.R.D. 609, 630 (M.D. Pa. 1997). When producing ESI "as kept in the ordinary course of business," the most straight-forward method is to produce the device(s) (or forensic copies of the device(s)) on which the files are stored. In the alternative, the responding party may choose to produce electronic files or documents rather than the devices. If it does so, however, it must ensure that the ESI is produced in a format that preserves the functional utility of the electronic information and provides sufficient information about the context in which the information was kept and organized by the producing party so that the requesting party can substantially replicate the system and find relevant documents. *McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co.*, 322 F.R.D. 235, 249-50 (N.D. Tex. 2016).

> A file that is converted to another format solely for production, or for which the application metadata has been scrubbed or altered, is not produced as kept in the ordinary course of business. . . If a document is maintained on a hard drive or in a storage device in the form in which it is created and edited (its "native" format, in the technical sense of the term), it must be produced in native format to be produced as it is kept in the ordinary course of business. Preservation of format is

ORDER REGARDING DEFENDANT'S
MOTION TO COMPEL - 2

important because conversion from native format may eliminate or degrade search and other information processing features (*e.g.*, copy, paste, and sort). Such features may allow a user to identify relevant information in a document much more quickly, which would significantly enhance the value of a document to a business. Allowing a party to defeat this functionality would undermine the purpose of producing information as it is kept in the usual course of business.

[In addition], the producing party must provide information about where the documents are kept and how they are organized. For documents stored on a computer or external storage device, this means providing system metadata indicating at least the file name and path for produced files. The files and system metadata[] must be organized in a manner that "permits systemized retrieval" of files based on the metadata. In other words, the requesting party must be able to search for and readily access files with particular characteristics (*e.g.* all .doc files in X folder).

For emails, the relevant context is somewhat different. A user typically views emails not in a file browser, but in an email client. While the relevant organizational information for files viewed in a file browser is file name and path, the relevant information in an email client is the date the email was transmitted, perhaps along with the parties to the email (sender and recipients), and the subject line.

*McKinney/Pearl Rest. Partners*, 322 F.R.D. at 250 (quoting *Teledyne Instruments*, 2013 WL 5781274, at * 9-10) (internal citations and footnotes omitted).

Brewer complains that Money Mailer's production was not labeled to correspond with his discovery requests, but Money Mailer was entitled to produce ESI as kept in the usual course of business instead. Brewer all but ignores this option, simply asserting that the ESI was not produced "with sufficient meta data to meaningfully identify the author, title, subject matter, or unique file information" for each record. Dkt. # 159 at ¶ 4. No specific documents were discussed and no examples were provided. In addition, Brewer failed to raise the alleged insufficiency of Money Mailer's metadata during the parties' meet and confer. Dkt. # 170 at ¶ 4. When Money Mailer pushed back against Brewer's general claims of insufficiency with competent evidence that it produced its ESI as it is kept in the usual course of business and with

ORDER REGARDING DEFENDANT'S
MOTION TO COMPEL - 3

extensive metadata, Brewer withdrew its objections to the vast majority of Money Mailer's production (approximately 95%), instead focusing on 1,600 pages that were produced as part of plaintiff's initial disclosures, 4,045 spreadsheets or worksheets "that were not produced in categorized folders," and Money Mailer's use of the word "almost" in its response memorandum. Dkt. # 172 at 3-4; Dkt. # 173 at ¶¶ 3-4.

None of these arguments is availing. Initial disclosures are made pursuant to Fed. R. Civ. P. 26(a), which does not require either functionality or location/context when copies of documents are produced. With regards to the 4,045 documents specifically mentioned by Brewer in reply, he does not explain what a "categorized folder" is or how its absence impacted the functionality of the ESI produced or his ability to locate responsive documents contained therein. The folderol regarding Money Mailer's use of the word "almost" is difficult to comprehend. Money Mailer noted that its "productions were almost exclusively email and attachments collected from Money Mailer's custodians . . . ." Dkt. # 162 at ¶ 2. *See also* Dkt. # 169 at 6. As discussed above, the metadata that must be produced regarding emails varies from that which applies to other types of ESI. If there were a discovery violation associated with the production of emails - if, for example, Money Mailer has hidden key spreadsheets or Google Drive documents in dysfunctional .pdfs attached to the emails it produced - Brewer makes no effort to identify or substantiate such a violation. Rather, Brewer misinterprets Money Mailer's statement regarding the content of its production as a statement that it produced its documents "almost" - but not entirely - in accordance with the requirements of Fed. R. Civ. P. 37. Dkt. # 172 at 3-4. That is obviously not what Money Market said, and the Court is deeply troubled by Brewer's attempt to salvage his motion to compel by unreasonably interpreting Money Market's statement

as an admission of discovery violations.

**B. Statement of Completion**

Brewer offers no authority for his demand that Money Mailer certify that it has produced all documents responsive to each discovery request. The parties' agreement regarding discovery of ESI (Dkt. # 42) calls for the use of targeted search terms and contemplates technology-aided searches that may or may not identify every responsive document. In addition, the rules of civil procedure require a certification that a discovery response is complete at the time it is made and impose an on-going duty to supplement if the production turned out to be incomplete in some material respect. Fed. R. Civ. P. 26(e)(1). A separate certification such as the one requested by Brewer is not required. Nevertheless, given the length of time this case has been pending and the upcoming case management deadlines, when Money Mailer ceases its formal efforts to locate responsive materials and has completed its anticipated production, it shall so notify defendant.

**C. Communications with In-House Counsel**

During the meet and confer held on May 17, 2018, Money Mailer apparently said something that made Brewer suspect that Money Mailer had not produced internal communications on which its in-house counsel was copied. Money Mailer clarified that it was withholding communications with in-house counsel only when he was acting in his capacity as counsel. (Money Mailer had, in fact, produced almost 500 documents that were authored by or sent to in-house counsel, including a number of internal communications.) Brewer nevertheless filed a motion to compel the production of Mr. Craciun's non-privileged communications, then claimed victory when Money Mailer again pointed out that it was only withholding privileged communications. This part of Brewer's motion to compel is wholly unsupported: he admits that

ORDER REGARDING DEFENDANT'S
MOTION TO COMPEL - 5

he is not entitled to privileged communications and has made no effort to show that non-privileged communications have been withheld. If, as asserted in reply, Brewer learned through the briefing that Money Mailer did, in fact, review counsel's communications for privilege, that only means that he failed to adequately confer regarding this issue before filing the motion.

For all of the foregoing reasons, Brewer's motion to compel is DENIED with the exception that Money Mailer shall notify Brewer when it ceases its formal efforts to locate responsive materials and has completed its anticipated production. Because Brewer failed to acknowledge Money Mailer's right to produce documents as kept in the usual course of business, failed to adequately confer regarding the sufficiency of the metadata produced with Money Mailer's ESI, failed to show that the ESI production was inadequate in any way, failed to adequately confer regarding the nature and scope of Money Mailer's privilege review, and failed to show that he was entitled to any additional production, the motion to compel was not substantially justified and Money Mailer is entitled to an award of reasonable expenses incurred in opposing the motion. Money Mailer shall, within fourteen days of the date of this Order, submit a properly supported statement of fees and costs, which shall be noted on the Court's calendar for the third Friday after filing.

Dated this 30th day of March, 2020.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER REGARDING DEFENDANT'S
MOTION TO COMPEL - 6