UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MONEY MAILER, LLC,<br><br>           Plaintiff,<br><br>     v.<br><br>WADE G. BREWER,<br><br>           Defendant. | NO. C15-1215RSL<br><br>ORDER DISMISSING COUNTERCLAIMS |

This matter comes before the Court on counterclaim defendants' "Motion for Summary Judgment." Dkt. # 257. Counterclaim plaintiff Wade G. Brewer has asserted thirteen claims against Money Mailer Franchise Corporation, Money Mailer, LLC, Gary M. Mulloy, John Patinella, Joseph J. Craciun, and/or Ryan Carr (hereinafter, "Money Mailer" or "the franchisor"), including contract, statutory, and common law claims. Dkt. # 139 at 5-23. Money Mailer seeks summary judgment in its favor on all of the counterclaims.

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact that would preclude the entry of judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) and "citing to particular parts of materials in the record" that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56©)). Once the moving

ORDER DISMISSING COUNTERCLAIMS - 1

party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. The Court will "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 450 (9th Cir. 2018). Although the Court must reserve for the trier of fact genuine issues regarding credibility, the weight of the evidence, and legitimate inferences, the "mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient" to avoid judgment. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 925 (9th Cir. 2014). In other words, summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable fact finder could return a verdict in its favor. *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1071 (9th Cir. 2019).

Having reviewed the memoranda, declarations, and exhibits submitted by the parties, and taking the evidence in the light most favorable to Brewer, the Court finds as follows:

Brewer has abandoned his third, fourth, sixth, and tenth counterclaims, offered no response to Money Mailer's arguments regarding his twelfth counterclaim or discrete portions of his first counterclaim,[1] and concedes that his breach of good faith and fair dealing counterclaim

---

[1] Brewer's first counterclaim alleges violations of the Washington Consumer Protection Act ("CPA") arising out of eleven acts or practices. He has not offered evidence in support of his allegations that Money Market "unreasonably discriminates between franchises,""unlawfully required release, waiver, or assignment liability," imposes "unreasonable and unnecessary standards of conduct" on franchisees, or "terminated Brewer's franchise without good cause." Dkt. # 139 at ¶ 4.2. In addition, other acts or practices described in the first counterclaim, such as the repossession of valuable customer

ORDER DISMISSING COUNTERCLAIMS - 2

is simply a defense against Money Mailer's contract claim. Brewer has also waived any claim for relief other than rescission and restitution.[2] Thus, the only claims at issue in this motion are:

> First Cause of Action - a CPA claim based on allegations that Money Mailer violated Washington's Franchise Investment Protection Act ("FIPA") by (i) charging franchisees unreasonable and unfair fees for goods and services and (ii) making untrue statements or omissions of material fact in connection with the purchase of a franchise;
>
> Second Cause of Action - a declaratory judgment claim seeking a declaration of rights and obligations under the Franchise Agreement, a March 2013 Agreement, a November 2013 Agreement, and a Management Agreement;
>
> Fifth Cause of Action - a breach of contract claim related to a March 2013 Agreement;
>
> Seventh Cause of Action - a breach of contract claim related to a Consulting Fee Agreement;
>
> Eighth and Ninth Causes of Action - intentional and/or negligent misrepresentation claims regarding information provided (i) before the parties entered into the Franchise Agreement and (ii) when Brewer was struggling to make his franchise profitable; and Eleventh Cause of Action - a claim of aiding and abetting against the individual defendants.

---

information, mirror causes of action which have now been abandoned or, with regards to the good faith and contract claims, are discussed elsewhere.

[2] *See* Dkt. # 198 at 2 ("[Brewer] is merely seeking disgorgement of the hidden, marked up fees Money Mailer forced him to pay in violation of Washington Franchise Investment Protection Act (and/or the CPA)."). *See also* Dkt. # 243 at 3 (seeking only restitution, not lost profits or other damages associated with the loss of his business); Dkt. # 247 at 4 ("Brewer has elected his remedies and seeks rescission and restitution."); Dkt. # 247 at 20 ("He is only asking for (1) the illegal markups that Money Mailer received from him in payments relating to printing, envelopes, other charges in violation of FIPA (and the CPA); and (2) the monthly royalty franchise fees Brewer paid to Money Mailer."). Brewer has, however, preserved his claim for treble damages and attorney's fees if he is successful on his CPA claim.

ORDER DISMISSING COUNTERCLAIMS - 3

The Court will assume, for purposes of this motion, that Brewer will ultimately be able to prove liability under one or more of his claims.[3] Nevertheless, dismissal of the counterclaims is warranted. Regardless of whether Brewer shows that Money Market (a) violated FIPA by selling products and services to its franchisees "for more than a fair and reasonable price" or by failing to disclose a material fact that was necessary to make its other disclosures not misleading, (b) breached one of the ancillary contracts negotiated by the parties as Brewer struggled to make his franchise profitable, or (c) made affirmative misrepresentations on which Brewer relied, he has failed to produce evidence from which a reasonable jury could conclude that he is entitled to the relief he has requested in this litigation.

Starting in July 2018, Brewer drastically narrowed the relief he was seeking an apparent bid to close off certain avenues of discovery. *See* Dkt. # 179 at 3. Since that time, Brewer has repeatedly confirmed that he has elected to pursue only the remedies of rescission and restitution, waiving any claim for other forms of compensatory relief, such as lost wages, lost profits, reputational injury, emotional distress, opportunity costs, etc.[4] Consistent with his statements to the Court and opposing counsel, he has not submitted any evidence that would allow a jury to estimate, much less calculate, non-restitutionary damages.

Brewer is bound by his election. Under Washington law, restitution may be required when a person has been unjustly enriched at the expense of another. *Ehsani v. McCullough Family P'shp*, 160 Wn.2d 586, 594-95 (2007) (citing Restatement of Restitution § 1). This

---

[3] The Court therefore need not determine whether the Valpak evidence or the Printing Industries of America publication are admissible or whether the Middlebrook and Brewer testimony were adequately disclosed.

[4] As noted in footnote 2, Brewer has preserved his claim for treble damages and attorney's fees if he is successful on his CPA claim.

ORDER DISMISSING COUNTERCLAIMS - 4

method of recovery allows Brewer to recover the value of any benefit retained by Money Mailer following rescission of the contract under which those benefits were provided.

> In such situations a quasi contract is said to exist between the parties. *Bill v. Gattavara*, 34 Wn.2d 645, 650 (1949) (stating "the terms 'restitution' and 'unjust enrichment' are the modern designations for the older doctrine of 'quasi contracts.'"); *State v. Cont'l Baking Co.*, 72 Wn.2d 138, 143 (1967) ("If the defendant be under an obligation, from the ties of natural justice, to refund; the law implies a debt, and gives this action, founded in the equity of the plaintiff's case, as it were upon a contract, (quasi ex contractu) ....") (internal quotation marks omitted) (quoting *State ex rel. Employment Sec. Bd. v. Rucker*, 126 A.2d 846 (Md. 1956) (quoting *Moses v. Macferlan*, 2 Burr. 1005, 97 Eng. Rep. 676, 678 (1760))).

*Young v. Young*, 164 Wn.2d 477, 484 (2008). In order to sustain a claim of restitution, one must show that the enrichment of the defendant was unjust. *Lynch v. Deaconess Med. Ctr.*, 113 Wn.2d 162, 165 (1989). In other words, in order to have a quasi contractual right to restitution following rescission of the underlying contracts, Brewer must show that Money Mailer received a benefit at his expense and that the circumstances make it unjust for Money Mailer to retain that benefit without payment. *Young*, 164 Wn.2d at 485.

Brewer has not made such a showing. As his expert readily acknowledged, amounts Brewer paid Money Mailer to discharge third-party charges are not recoverable. *See* Dkt. # 189 at 16. Those payments, which merely cleared debts that Money Mailer had incurred on Brewer's behalf, in no way benefitted Money Mailer. The record shows that Money Mailer paid $2,296,969 to third parties for postage and freight related to Brewer's mailings. Dkt. # 202 at 8. Brewer's expert opines that Money Mailer incurred costs of $877,324 to print Brewer's mailings. Out-of-pocket expenses related to envelopes were another $265,066. Dkt. # 251-8 at 14. Thus, Money Mailer incurred third-party charges of over $3.4 million to print and deliver the

ORDER DISMISSING COUNTERCLAIMS - 5

mailings for Brewer's franchise. Over the course of his franchise, Brewer paid Money Mailer a total of only $2,509,799. Because that amount did not even cover the actual costs Money Mailer incurred on Brewer's behalf, Brewer cannot show that Money Mailer was enriched by his payments, much less that such enrichment was unjust. Restitution is therefore unavailable, and Money Mailer is entitled to judgment on Brewer's counterclaims.

Brewer argues, however, that injury cognizable under the CPA is a broad concept that includes any proof of injury, including loss of professional/business reputation, lost opportunity costs, and time/expenses spent investigating and untangling the deception. Following his election of remedies, however, the only injury at issue is the mark up on the products and services provided by Money Mailer during the franchise period. Because Brewer has failed to provide evidence that could support a finding in his favor regarding the sole injury remaining in the case, his CPA claim fails along with the others.[5]

For all of the foregoing reasons, Money Mailer's motion for summary judgment on Brewer's counterclaims (Dkt. # 257) is GRANTED.

Dated this 8th day of September, 2020.

Robert S. Lasnik
United States District Judge

---

[5] The Court recognizes that Brewer has used various formulations to describe the relief he is requesting, some of which are broader than others. He cannot, however, avoid unequivocal and clear representations to the Court, such as, "Brewer has elected his remedies and seeks rescission and restitution," (Dkt. # 247 at 4) merely be equivocating elsewhere.

ORDER DISMISSING COUNTERCLAIMS - 6